tWOODARD, Judge.
This is a redhibition suit. Mike LeGros (LeGros) purchased a motor for his commercial fishing boat from ARC Services, Inc. (ARC). Immediately after purchase, the engine began to malfunction, requiring that it be overhauled. The engine continued to malfunction. More than a year after purchasing the engine, LeGros discovered that the source of its problems was that the wrong cam-shaft had been installed. LeGros filed suit against ARC, which filed an exception of prescription. The trial court granted the exception. We reverse.
FACTS
On March 24, 1995, LeGros purchased a 855 cubic inch, 400 HP Cummings, heavy- *1017 duty engine from ARC. The engine was to be used in LeGros’ commercial fishing boat. LeGros paid ARC $15,085.56 to build and install the engine. LeGros first experienced problems with the new engine on the second or third night he used it due to overheating which caused the manifold to burst. The damage required a ^complete overhaul, which ARC performed at no charge to LeGros. The overhaul apparently did not fix the problem, because ARC had to overhaul the engine on two more occasions. The third overhaul was done at the end of July, 1995. When the manifold needed to be replaced in September of 1995, LeGros called ARC but was told that ARC did not have the needed parts. The engine had to be repaired by a different shop. The problems continued and, for the fifth time, LeGros called ARC. In addition to the manifolds, the turbos needed to be replaced. It appears that ARC provided the turbo parts as a warranted claim on or about June 6,1996, based on an invoice in the record, but again did not have the manifold in stock. The engine continued to overheat. LeGros suspected that the problem was the cam-shaft. He told ARC of his concerns but was assured that the cam-shaft was not the problem.
Because of the continuous problems, LeG-ros requested that Gulf Coast Power look at his engine to see if it could determine why the engine ran hot. On November 1,1996, it pulled the cam-shaft from the engine and informed LeGros that it was not the correct cam-shaft for an engine of this size. This was the first and only time the cam-shaft was removed since LeGros’ purchase. LeGros informed ARC of the problem, but it refused to repair or replace the cam-shaft. Gulf Coast Power eventually replaced it.
LeGros filed a redhibitory action against ARC on August 28,1997. ARC claimed that the suit was filed after the prescriptive period. It argued that the one-year prescriptive period began when LeGros first realized that the engine was not fit for its ordinary purposes or was inconvenient for its ordinary use. ARC claimed this was in April of 1995, when LeGros first began having problems with the engine. LeGros opposed the exception, arguing that the one-year prescriptive period began when Gulf Coast Power removed the cam-shaft and discovered it was the wrong size. The trial court sustained ARC’S exception of prescription and dismissed LeGros’ suit with prejudice. We reverse.
LAW
LeGros’ sole assignment of error is that the trial court erred when it sustained ARC’s exception of prescription.
La.Civ.Code art. 2534 provides in part:
[A- (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
[[Image here]]
B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.
(Emphasis added.)
In Jordan v. Employee Transfer Corp., 509 So.2d 420, 423-24 (La.1987), the supreme court discussed the kind of notice of a defect which starts the running of prescription. The court stated:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
*1018 When prescription begins to run depends on the reasonableness of a plaintiffs action or inaction. The Jordans knew there was damage on October 1, 1982, when they discovered the water in their den. However, prescription did not begin to run until they had a reasonable basis to pursue a claim against a specific defendant. This did not occur until December 1, 1982, when the plaintiffs had a reasonable basis to conclude that Key’s assurances and the Madden report were incorrect. Since the Jordans filed suit on December 1, 1983, prescription had not yet run.
(Emphasis added.)
The discovery that the cam-shaft in the engine was the incorrect size was not made until November 1, 1996. Until that time, LeGros could not know what the precise redhibitory defect of the engine actually was in order to pursue a legal claim. The flaw in the trial court’s reasoning is that it assumes that simply because the engine ^manifested problems requiring its overhaul, without LeGros having knowledge of the exact defect in the engine, he could plead and prove a ease of redhibition; and, therefore, prescription began to run with the first malfunction of the engine.
LeGros had voiced his suspicions to ARC that the cam-shaft was the problem. Their mechanics assured him that the cam-shaft was not the source of the engine failures. LeGros reasonably relied on those ARC representations even though they were later proved mistaken. We cannot agree with the trial court that prescription had run and hold that ARC should have the legal benefit of prescription simply because it was unable to solve the engine’s problems.
The exact defect was not discovered until November 1, 1996, when the cam-shaft was first removed from the engine. Prescription began to run on that date. This suit was filed on August 28, 1997, within the one-year prescriptive period. Therefore, the trial court erred in sustaining ARC’s exception of prescription.
CONCLUSION
The trial court erred in holding that LeG-ros’ claim prescribed because of his failure to bring suit prior to the time it was discovered that the cam-shaft was the reason for the engine’s inability to function properly. The trial court’s decision is reversed. Appellee is cast for all costs of this appeal.
REVERSED.